# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**TINA TRZECIAK,**[1]

                      **Plaintiff,**

    **v.**

**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**

                      **Defendant.**

Civ. No. 15–6333 (KM)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

    Tina Trzeciak brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.

## I.    BACKGROUND

    Ms. Trzeciak seeks to reverse an ALJ's finding that she was not disabled from June 23, 2011, the alleged onset date, through February 25, 2014, the date of the ALJ's decision. (R. 9–26)

    Ms. Trzeciak applied for DIB and SSI on September 19, 2011, claiming disability due to difficulty ambulating and speaking, alcoholism, and depression. (R. 89, 101)[2] Her applications were denied initially on April 23,

---

[1]    This appears to be the correct spelling of Ms. Trzeciak's name. The clerk is directed to amend the caption accordingly.

[2]    Pages of the administrative record (ECF no. 7) are cited as "R. __."

2012 (R. 114–15), and upon reconsideration on January 8, 2013 (R. 194–95). On February 25, 2014, following a hearing at which Ms. Trzeciak testified and was represented by counsel (R. 38–88), ALJ Sandra H. Morales-Rosa found that Trzeciak was not under a "disability" as defined in the Social Security Act. (R. 9–26). On July 2, 2015, the Appeals Council denied Trzeciak's request for review (R. 1–6), rendering the ALJ's decision the final decision of the Commissioner. Ms. Trzeciak now appeals that decision.

## II.   DISCUSSION

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). To be eligible for SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. § 1382. To qualify under either statute, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see, e.g., Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A.   Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

2

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. (Those Part A criteria are purposely set at a high level, to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the SSA to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a

preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, or it may remand the matter to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007) (not precedential).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B.    The ALJ's Decision

ALJ Morales-Rosa properly followed the five-step process. Her conclusions may be summarized as follows.

4

**Step 1**

At step one, the ALJ determined that Ms. Trzeciak had not engaged in substantial gainful activity in the relevant period. (R. 14 ¶¶ 1, 2)

**Step 2**

At step two, the ALJ found that Ms. Trzeciak had the following severe impairments: "degenerative disc disease of the cervical spine; history of pancreatitis, secondary to alcohol abuse; alcohol-related neuropathy; depressive disorder; anxiety disorder, not otherwise specified (NOS); and alcohol dependence in partial remission (20 CFR 404.1520(c) and 416.920(c))." (R. 14 ¶ 3) The ALJ also found that Ms. Trzeciak suffered from non-severe impairments, including "ataxia; lower extremity edema on the right; hyponatremia and hypokalemia; and psychotic disorder, not otherwise specified (NOS)." (R. 15)

**Step 3**

At step three, the ALJ determined that Ms. Trzeciak's impairment or combinations of impairments did not meet or medically equal the severity of one of the listed impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. (R. 15 ¶ 4)

**Step 4 – RFC /Ability to Perform Past Work**

At step four, the ALJ defined Ms. Trzeciak's RFC as follows:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is able to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. She can sit for six hours and she can stand and/or walk for four hours in an eight-hour workday. The claimant can frequently reach overheard and in any direction with both upper extremities. She has no handling, fingering or feeling limitations. The claimant can occasionally climb ramps and stairs but she must never climb ladders, ropes or scaffolds. She can balance, stoop, kneel, crouch, and crawl on an occasional basis. The claimant must avoid all exposure to hazards (machinery, heights, etc.) Mentally, the claimant is restricted to simple tasks. She can stay on tasks at two-hour intervals. She is also limited to

frequent contact with the public, and has no limitations to have contact with supervisors and co-workers.

(R. 17 ¶ 5)

The ALJ then found, contrary to the determination of the Disability Determination Services ("DDS"), that Ms. Trzeciak was unable to perform past relevant work as either a graphic designer or a cashier. (R. 24 ¶ 6) Both of those occupations are skilled or semi-skilled, respectively, and thus exceed the mental demands of simple, unskilled work. (*Id.*)

**Step 5**

At step five, the ALJ considered Ms. Trzeciak's "age, education, work experience, and residual functional capacity" and the Medical-Vocational Guidelines, and determined that Trzeciak could perform jobs that exist in significant numbers in the national economy. (R. 25 ¶ 10) Relying on the testimony of the vocational expert ("VE"), Héctor A. Puig, Ph.D, the ALJ identified a representative unskilled, light job that Trzeciak could perform: inspector, missing parts (DOT # 727.687-062). According to the VE, such jobs existed in numbers in the thousands regionally, and in the hundreds of thousands nationally. (R. 25, 75)

Accordingly, ALJ Morales-Rosa concluded that Ms. Trzeciak was not under a disability, as defined in the SSA, from June 23, 2011, through February 15, 2014, the date of the ALJ's decision. (R. 26 ¶ 11)

**C.    Analysis of Ms. Trzeciak's Appeal**

Ms. Trzeciak challenges the ALJ's determination that she was not disabled during the relevant period, arguing that the ALJ committed errors at steps three, four, and five of the five-step analysis. Ms. Trzeciak requests that this Court reverse the ALJ's decision or remand the decision to the Commissioner for a new hearing and decision. Addressing each of Trzeciak's arguments in turn, I find that the ALJ's findings do not contain any errors of law or procedure, and they are supported by substantial evidence.

6

### 1.   The ALJ's Step Three Analysis

At step three, Ms. Trzeciak argues, the ALJ (a) failed to sufficiently consider Trzeciak's anxiety individually and in combination with other impairments and (b) generally failed to consider the combined effect of all of her impairments. Trzeciak argues that these alleged procedural errors prevent meaningful judicial review of the ALJ's step three analysis. I disagree.

The claimant bears the burden of proving that her impairments, whether individually or collectively, equal or meet those listed in Appendix 1. However, "if a claimant's impairment does not match one listed in Appendix 1, the ALJ is required to perform a comparison between the claimant's impairment(s) and those listed in Appendix 1." *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 151–52 (3d Cir. 2008); *see also* 20 C.F.R. § 404.1526(b). The Third Circuit has stated that step three requires the ALJ to perform "an analysis of whether and why [the claimant's individual impairments], or those impairments combined, are or are not equivalent in severity to one of the listed impairments." *Burnett*, 220 F.3d at 119. The ALJ is "not require[d]...to use particular language or adhere to a particular format in conducting [her] analysis"; rather, there must be "a sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505.

For the most part, Ms. Trzeciak's step three argument fails to identify the particular listing(s) that should have been considered and fails to discuss the medical evidence supporting the claim of equivalence.[3] Ms. Trzeciak identifies

---

[3] *E.g.*, Pl.'s Br. 25 ("There is no comparison between plaintiff's anxiety disorder and paragraph 12.06, the listing specified by the Commissioner for the comparison of anxiety disorders. There is no combination between the 12.04 depressive aspects of plaintiff's mental illness with the 12.06 anxiety aspects."); Pl.'s Br. 25-26 ("T[he] difficulty in walking was not combined with plaintiff's three level disc disease in the cervical spine."

only one listed impairment to which she believes her impairments are equal in severity.[4]

### a)   *Ms. Trzeciak's Anxiety Disorder and Listing 12.06*

The ALJ identified "anxiety disorder" as a severe impairment at step two. Ms. Trzeciak argues that the ALJ erred by failing to consider whether her anxiety, alone or in combination with other severe impairments, met or was medically equivalent to Listing 12.06 for anxiety-related disorders.[5]

Although ALJ Morales-Rosa does not explicitly mention anxiety at step three, an ALJ is not required to repetitively analyze each symptom at each step; the requirement is that the decision be subject to "meaningful review" by a reviewing court. *See Wilkinson v. Colvin*, 2014 WL 1316056, at *8 (D.N.J. Apr. 1, 2014 (finding no error in step three where ALJ failed to mention dizziness and other symptoms) (citing *Jones*, 364 F.2d at 505). I am satisfied from the decision as a whole that the ALJ had in mind the evidence as to anxiety and considered it adequately.

At step three, ALJ Morales-Rosa thoroughly considered Listing 12.04 (affective disorders), which shares many of the same criteria as Listing 12.06, and I conclude that her consideration of Ms. Trzeciak's symptoms in the context of 12.04 and her other findings were adequate to determine that Trzeciak also could not have met the 12.06 criteria. As set forth in the ALJ's

---

[4] Trzeciak contends that the ALJ erred in finding that she did not meet listing 11.14 for peripheral neuropathies. In doing so, Trzeciak misstates the ALJ's finding, claiming that "plaintiff is found not to meet this listing because she does not suffer disorganization of motor function in two extremities disturbing gait and station. But she clearly does and the medical expert said so." (Pl.'s Br. 25) In doing so, Trzeciak ignores crucial details. First, the medical expert on whom Trzeciak relies testified that Trzeciak's physical impairments, including neuropathy and ataxia, did not meet or equal any listing, including 11.14 which the expert explicitly considered and rejected. (R. 47) Second, in order to meet 11.14, the disorganization of motor function must be "significant and persistent" and in "two extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.14. The ALJ found that these criteria were not met. (R. 16), and this finding is supported by substantial evidence, as described below.

[5] Ms. Trzeciak's applications for DIB and SSI do not list anxiety as a basis for her disability claim. (R. 89, 101)

decision, to meet or medically equal Listing 12.04, a claimant must meet either: (1) the requirements of Paragraph A *and* the requirements of Paragraph B; *or* (2) the requirements of Paragraph C. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

As to the first alternative, the ALJ bypassed Paragraph A and focused on Paragraph B (both are required). Paragraph B requires that the claimant's impairment include at least two of the following four conditions:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration;

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. "'Marked' as a standard for measuring the degree of limitation . . . means more than moderate but less than extreme." *Id.* § 12.00. The ALJ found that Ms. Trzeciak had only mild restrictions in activities of daily living and social functioning. (R. 16) The ALJ further found that Trzeciak had only moderate difficulties in concentration, persistence and pace, and noted no instances of decompensation of extended duration. (*Id.* 17)

As to the second alternative, Listing 12.04 Paragraph C requires any of three symptoms: 1) repeated episodes of decompensation; 2) a residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or change in environment would cause the individual to decompensate; or 3) a history of one or more years' inability to function outside of a highly supportive living arrangement, with an indication of continued need for such an arrangement. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. The ALJ noted that none of those conditions were present, including "no evidence on the record of a . . . current history of one or more years' inability to function outside a highly supportive living arrangement." (R. 17)

The ALJ's conclusions as to Listing 12.04 were supported by substantial evidence. With respect to the Paragraph B criteria, Trzeciak does not experience marked restriction in activities of daily living or in social functioning. Trzeciak reported that she is able to "clean, do the laundry, wash the dishes, and prepare simple meals three times a week" on her own. (R. 16, 421-24) She takes care of her 80-year-old mother (R. 16, 602), and she pays the bills, handles a savings account, and uses a computer for playing games and general researching. (R. 18, 70, 424-26) She attends church at a mass in her building (R. 16, 68-69), goes out alone, uses public transportation, and is able to drive. (R. 424, 450) She shops in stores for groceries, clothes, and computer supplies, and visits the library (R. 18, 421) Additionally, she stated that she "[gets] along well with others, including neighbors, friends, and family." (R. 18, 70) All of this constitutes substantial evidence in support of the ALJ's conclusion that Trzeciak's activities of daily living and social functioning are not so impaired as to meet the Paragraph B criteria.

There is also substantial evidence to support the finding that Trzeciak's concentration, persistence, and pace are impaired, but only moderately so. Trzeciak "has some deficits maintaining concentration." (R. 19) Nonetheless, Trzeciak reports that she can maintain attention, finishes what she starts, and is able to follow both oral and written instructions, although she may need to write down lengthy oral instructions. (R. 452) Ms. Trzeciak's self-assessment on this point is consistent with the report her mother, Anne Trzeciak, completed. (R. 460) Ms. Trzeciak can cite five digits in reverse, spell a five letter word backwards without errors, and recall two out of three words after five minutes. (R. 582) She is able to do serial sevens at some times (R. 607, 611) but not at others (R. 582, 587) According to medical expert testimony, Trzeciak could stay on task at two-hour intervals. (R. 58-59)

The ALJ also found that Trzeciak did not experience repeated episodes of decompensation of extended duration (R. 17, 23)

Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. An episode of decompensation must last "for at least 2 weeks" to be considered "of extended duration." *Id.* The ALJ rejected the opinion of Jane Shapiro, Ph.D.—a non-examining psychologist consulted by DDS—that Trzeciak had one or two episodes of decompensation. The ALJ's rejection of Dr. Shapiro's determination is supported by substantial evidence. Trzeciak was hospitalized principally for mental conditions three times in 2011 – 2012 (R. 23):[6] twice in 2011 for depression (R. 23) and once in 2012 for psychosis (R. 596). Only Ms. Trzeciak's 16-day hospitalization during July 2011 lasted more than two weeks. (R. 559-573) The ALJ also could and did rely in part on the opinions of Dr. Ramon Fortuño, a psychiatrist and impartial medical expert, and Dr. Cheryl Sanford, a state psychological consultant, who both stated that Trzeciak experienced no episodes of decompensation. (R. 54, 95, 107)

Even had Ms. Trzeciak experienced two episodes of extended duration, in the absence of "three episodes within 1 year . . . each lasting for at least two weeks" it is left to the ALJ's judgment "to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. The ALJ's determination that Trzeciak met

---

[6] Although "altered mental status" was a reason for Ms. Trzeciak's admission to Phoenixville Hospital in June 2011, her principal diagnoses at the time were severe hyponatremia, severe hypokalemia, and chronic alcoholism. In addition, she was discharged after only five days. (R. 494)

11

neither the Paragraph B nor the Paragraph C criteria of 12.04 was therefore supported by substantial evidence.

Do these Listing 12.04 findings read onto Listing 12.06? I believe they do. To meet or medically equal Listing 12.06 for anxiety related disorders, a claimant must meet either: (1) the requirements of Paragraph A *and* the requirements of Paragraph B; *or* (2) the requirements of Paragraph A *and* the requirements of Paragraph C—just as under Listing 12.04. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06. Here, as before, I bypass Paragraph A and focus on Paragraphs B and C.

The four Listing 12.06 Paragraph B requirements are identical to those under Listing 12.04, discussed above. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06. Thus the ALJ's 12.04 findings preclude Trzeciak from meeting the Listing 12.06 requirements for Paragraph B.

As for Paragraph C, unlike 12.04, Listing 12.06 simply requires that the claimant's anxiety-related disorder "[r]esult[] in complete inability to function independently outside the area of one's home." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06. The ALJ's findings—based on Trzeciak's own testimony—that she can attend church at a mass in her building (R. 16), go out alone, use public transportation, drive, shop in stores for groceries, clothes, and computer supplies, and visit the library (R. 18), preclude any finding that Trzeciak is completely unable to function independently outside the area of her home.

Those conclusions are further supported by the ALJ's discussion of Ms. Trzeciak's anxiety at step four of the analysis. The ALJ clearly considered the severity of Trzeciak's anxiety and found it to fall below the threshold that would be required to find disability at step three. As the ALJ observed (R. 20-21), the progress notes of Trzeciak's primary care physician indicate that he prescribed her medication for her anxiety (R. 620-25). There is no evidence of psychotherapy in the record (R. 21), corroborating the conclusion that the anxiety impairment was relatively non-severe. The ALJ found that Trzeciak's "depressive disorder and anxiety cause more than minimal limitations in [her]

12

ability to perform work activity"—*i.e.,* severe for step two purposes. (R. 23) However, to meet a listing at step three, limitations that are merely "more than minimal" are not sufficient. After thoroughly considering and weighing the evidence in the record, the ALJ found that Trzeciak has only mild restrictions of activities in daily living, mild restrictions maintaining social functioning, moderate difficulties maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration.

Therefore, substantial evidence supports the ALJ's finding that Trzeciak's impairments, alone or in combination, are not equivalent to Listing 12.06.

### b)   *The Combination of Ms. Trzeciak's Impairments*

Ms. Trzeciak further argues that the ALJ did not properly consider whether any combination of her impairments was equivalent in severity to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Pl.'s Br. 22-26) In particular, Trzeciak argues that the ALJ failed to consider whether her difficulty in walking combined with her degenerative disc disease of the cervical spine matched the severity of a listed impairment. (*Id.* 25-26) I disagree.

The ALJ stated that "the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 15) I see no reason to doubt that she considered the combination of impairments. In fact, the ALJ holistically evaluated the intensity, persistence, and limiting effects of Ms. Trzeciak's impairments and concluded that Trzeciak's activities of daily living and social functioning demonstrate that her physical and mental conditions are not disabling. (R. 18) The ALJ noted that Trzeciak's "fairly extensive activities of daily living," partially listed above, are "not expected in an individual claiming inability to work as a result of both physical and mental conditions." (R. 18) Thus, assessing the record as a whole, I am satisfied that the ALJ properly considered Ms. Trzeciak's impairments alone and in combination, including the

13

combination of Trzeciak's difficulty walking and degenerative disc disease, and found that no combination matched the severity of a listed impairment.

### 2.   The ALJ's RFC Evaluation

Residual functional capacity is an assessment of the most a claimant can do despite her impairments. *See* 20 C.F.R. §404.1545. To determine a claimant's RFC, an ALJ must engage in a two-step process: first, consider all of a claimant's symptoms which can reasonably be accepted as consistent with the objective medical evidence, and second, determine how those symptoms affect the claimant's ability to work. 20 C.F.R. §404.1529. Here, ALJ Morales-Rosa determined that Trzeciak had the residual functional capacity to "perform light work" with additional limitations. (R. 17) Ms. Trzeciak argues that the ALJ erred in finding that Trzeciak could stand and/or walk for four hours in an eight-hour workday.

I find that the ALJ sufficiently analyzed the evidence in the record and explained her RFC findings—including her finding as to Trzeciak's ability to stand and/or walk—which are supported by substantial evidence. In determining the claimant's RFC, the ALJ considered Trzeciak's testimony, third-party function reports completed by Trzeciak's mother, the testimony of Drs. Javier Anya and Ramon Fortuño, Trzeciak's hospital records, the reports of Drs. George Long, Betty Vekhnis, Ernesto Perdomo, Vasudev Makhija, Cheryl Sanford, Jane Shapiro, Isabella Rampella, and Deogracias Bustos, and the medical record as a whole. (R. 17-24) The ALJ analyzed the evidence from each of these sources and explained the weight she gave to each source, commensurate with its supportability and consistency with the record as a whole. (R. 18, 20-24)

First, I will summarize the evidence related to Ms. Trzeciak's ability to stand and walk during the workday. Then, I will address Trzeciak's specific arguments that the ALJ erred.

14

### a)   *Evidence of Ms. Trzeciak's Ability to Stand/Walk*

On July 2, 2011, Ms. Trzeciak was admitted to Pottstown Memorial Medical Center. A physical examination was within normal limits, though her gait was unsteady and her speech slurred. (R. 560) On July 7, 2011, she had a consultation for her gait problems but she was unable to cooperate for portions of the exam. (R. 561, 564) On July 15, 2011, she had a consultation for speech and ambulation difficulty. She reported difficulty walking, but the examining doctor was unable to determine how long the problem had lasted. (R. 566) She seemed to be almost frozen at times, required her walker while standing, took small steps without any increased wideness of the base, and took multiple steps to make a turn. (R. 567) The examining physician noted her gait disorder with some apparent bradykinesia and identified it as most likely to be atypical parkinsonism, but he was uncertain whether the condition was related to previous drug exposure. (R. 567-68) On July 19, 2011, Trzeciak was admitted to Phoenixville Hospital due to problems with alcohol-related neuropathy and depression. During an exam the next day, she was found to have good strength in her limbs and could ambulate well without assistance. (R. 501) She had some right foot swelling, but no deep vein thrombosis (R. 501), and her musculoskeletal exam was normal (R. 510).

Ms. Trzeciak was treated by Dr. George Long for anxiety and depression on November 7, 2011, August 24, 2012, and November 21, 2012. (R. 622-624) On each of those three occasions, Dr. Long noted that the examination revealed no joint pain or swelling, no muscle aches or weakness, normal range of motion, a normal neurological exam, and normal tone with no atrophy or hyperatrophy. (*Id.*) He also noted on all three dates that Trzeciak had no gait disturbance. (*Id.*)

After applying for disability benefits, DDS referred Ms. Trzeciak to Dr. Betty Vekhnis for a March 7, 2012 neurological examination. Dr. Vekhnis noted that Trzeciak walked into the office without an assistive device. (R. 582) She was unable to walk tandem, could not stand on heels and toes, but was

stable in Romberg. Her motor examination showed normal tone and strength, no focal weakness in both upper and lower extremities. Dr. Vekhnis described Trzeciak's ataxia as mild and with no dysmetria. (R. 582, 584)

On March 16, 2012, Dr. Isabella Rampello, a state agency medical expert, reviewed Ms. Trzeciak's file and opined that she could stand and/or walk for four hours and sit for six hours in an eight-hour day. (R. 109) On October 15, 2012, state agency physician Dr. Deogracias Bustos, agreed with Dr. Rampello's assessment. (R. 124)

Ms. Trzeciak completed function reports on October 18, 2011 and August 3, 2012. She self-reported that she does housework for one or two hours a day (423, 449). In 2011, she reported going outside daily (R. 423), but only once or twice a week in 2012 (R. 449). She travels by walking, riding in a car, or using public transportation. (R. 424, 450) She goes to the library, post office, and other stores. (R. 421) In 2012, she reported grocery shopping once a week for two hours. (R. 450) As a result of her conditions she reported that she can no longer "ride a bike, walk fast, run, [or] ski." (R. 422) In addition, she reported that while cooking she cannot stand too long and has to sit (R. 423) and that while using the computer she cannot sit too long and has to "get up and walk around." (R. 425) She reported that she cannot do physical activities and that her condition affects both walking and sitting. (R. 425-26, 448) Nevertheless, she also reported that she could walk for one hour before needing to stop and rest, and she is able to resume walking after resting for only five to fifteen minutes. (R. 425, 452) In 2011, she reported a fear of falling or losing her balance, and she used a cane in open spaces so that she would not fall. (R. 427) However, in 2012, she did not report using any walking aid. (R. 453)

Ms. Trzeciak's mother, Ann Trzeciak, completed third-party function reports on October 18, 2011 and on August 6, 2012. She also reported that Trzeciak cannot stand, sit, or walk for too long (R. 407, 410) According to her, Trzeciak is able to shop "until she gets tired of walking" and "must sit down." (R. 408) She also reported that Trzeciak could walk for one hour before needing

16

to stop and rest for at least fifteen minutes before resuming to walk in 2011, but only needing a five-minute rest in 2012 (R. 410, 460), and that she used a cane in wide open spaces in 2011 but not in 2012 (R. 411, 461). In 2012, she reported that Trzeciak goes outside three times a week (R. 458), contrary to Trzeciak's self-reported one to two times a week (R. 449).

In an undated Disability Report, Trzeciak reported to SSA that she has been able to walk without an assistive device since June 2012. (R. 469)

Finally, at the hearing before the ALJ on February 3, 2014, Ms. Trzeciak testified that she prepares meals, does laundry, washes dishes, changes the sheets, washes the floors, and does other household chores. She also uses public transportation and goes grocery shopping. (R. 66-69) Dr. Anya, an internist and impartial medical expert, testified that Trzeciak had a gait disorder—mild ataxia—but that her muscle strength was normal. (R. 46) He opined that Trzeciak could sit for six hours and stand and/or walk for two hours in an eight-hour workday. (R. 49)

The ALJ properly considered and balance all of the foregoing evidence. (R. 18-24)

### b) *Trzeciak's Arguments for ALJ Error in Evaluating Her Ability to Stand/Walk*

Ms. Trzeciak now argues that the ALJ erred in rejecting Dr. Anya's opinion that Trzeciak was limited to *two* hours of standing and/or walking. (Pl.'s Br. 12) Trzeciak asserts that there is no medical evidence in the record to contradict Dr. Anya's assessment, that the ALJ's finding of specifically *four* hours was arbitrary (*Id.* 29), and that the ALJ offered only "laymen's speculation" based on unfounded inferences from Trzeciak's daily activities to support the rejection of Dr. Anya's opinion. (*Id.* 12-13) Thus, Trzeciak argues, the portion of the RFC finding that Trzeciak can walk and/or stand for four hours in a workday is not supported by substantial evidence. (*Id.* 12-15)

17

The ALJ gave only partial weight to the Dr. Anya's opinion and concluded that Trzeciak is able to stand and/or walk for four hours. (R. 20) The ALJ's finding is supported by substantial evidence. Trzeciak's assertion that there is no medical evidence in the record to contradict Dr. Anya's assessment itself ignores much of the medical evidence. For example, Dr. Long was Trzeciak's primary care physician and his examination notes from 2011-2012 indicate that his examinations revealed no gait disturbance. As the opinion of a treating physician, this was entitled to some weight. (R. 622-624) Further, Dr. Vekhnis described Trzeciak's ataxia as mild and with no dysmetria. (R. 582) Trzeciak's assertion that the ALJ appears to have *arbitrarily* selected four hours ignores one evident source of that figure: the independent findings of state agency physicians Drs. Rampello and Bustos that she could stand and/or walk for four hours. (R. 109, 124) The ALJ's assignment of great weight to their findings was proper. (R. 23-24) ALJs properly consider the opinions of state agency medical consultants as expert opinion evidence of nonexamining physicians, and must address such opinions in their decisions. SSR 96-5p; *see also* 20 CFR §§ 404.1527(f) and 416.927(f).

The ALJ's consideration of Trzeciak's daily activities as evidence that she could stand and/or walk for more than two hours in a workday was also proper. Although an ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence," *Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir.2000), Dr. Anya is not one of Ms. Trzeciak's treating physicians and therefore his opinion is not entitled to "great deference." *Id.* Ms. Trzeciak's daily activities are extensive, and it was reasonable for the ALJ to infer that she is able to stand and/or walk for four hours.

In sum, the record as a whole supports the ALJ's conclusion as to Trzeciak's RFC and adequately explains how ALJ Morales-Rosa made her determination. The RFC is thus supported by substantial evidence.

18

### 3.   The ALJ's Step Five Analysis

At step five, the Commissioner bears the burden of showing that the claimant can perform work which exists in the national economy, in light of her age, education, work experience and RFC. 20 C.F.R. § 404.1520(a)(4)(v). ALJ Morales-Rosa determined that Trzeciak, given her age, education, work experience and RFC, was able to perform unskilled light work with additional limitations. (R. 25) The ALJ therefore posed hypotheticals to the VE to determine whether there exist in the national economy in significant numbers unskilled, light jobs that a person with Ms. Trzeciak's age, education, work experience, and residual functional capacity could perform. (R. 25-26, 72-78) The VE responded to a hypothetical that included not more than four hours of standing and/or walking by suggesting a representative unskilled, light job that Trzeciak could perform: inspector, missing parts (DOT # 727.687-062), such jobs numbering in the thousands regionally, and in the hundreds of thousands nationally. (R. 25, 75) The VE further testified that the inspector, missing parts, job is bench work and that in such a job a person is mostly sitting but can stand up at will. (R. 78-79) The VE explained that the job was classified as light work due to its lifting and carrying requirements. (R. 79) The ALJ accepted the VE's testimony and found that Trzeciak was not disabled.

Ms. Trzeciak argues that the ALJ erred at step five in multiple ways. First, she asserts that the ALJ's finding that Trzeciak is unable to stand and/or walk for six hours in the workday precludes a finding that she is capable of "light work" as defined by the Commissioner's regulations or the Dictionary of Occupational Titles ("DOT"). (Pl.'s Br. 13, 15-17). According to her, any job title that the DOT classifies as light work requires that a person be able to stand and/or walk for six hours. This argument is meritless. Under the Commissioner's regulations:

> Light work involves lifting no more than 20 pounds at a time with
> frequent lifting or carrying of objects weighing up to 10 pounds.

> Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, *or when it involves sitting most of the time* with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b) (emphasis added). The regulations clearly include some jobs that "involve[] sitting most of the time" within the category of light work. The same is true for the DOT's definition, which notes that

> Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) *when it requires sitting most of the time* but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

"Appendix C: Components of the Definition Trailer," in Dictionary of Occupational Titles, U.S. Dep't of Labor, Office of Administrative Law Judges (4th ed. 1991), *at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM (emphasis added). Alternatives two and three clearly allow some jobs to be classified as "light work" without a requirement of walking or standing to a significant degree.

Ms. Trzeciak next argues that the ALJ improperly relied on the VE's testimony that the inspector, missing parts, job allows the worker to sit for most of the time. Trzeciak asserts that: 1) the VE's testimony conflicts with the DOT because a job classified as light work requires six hours of standing and/or walking, and the ALJ failed to resolve the conflict in violation of SSR 00-4p; 2) the VE offered no basis for his determination that the inspector, missing parts, job is "bench work"; and 3) the VE offered no basis for his determination that the job is classified as light work because of the lifting

20

required rather than the need to stand and/or walk for six hours. (Pl.'s Br. 15-22, 29-31) I disagree.

First, there is no conflict, or even apparent conflict, between the VE's testimony and the DOT. SSR 00-4p provides that:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

2000 WL 1898704 at *2. The DOT's definition of light work encompasses jobs without a requirement of six hours standing and/or walking, as discussed above. The VE merely supplemented the DOT's job description with more specific information based on his own experience and expertise and the National Labor Statistics. (R. 81, 84-85) Simply put, the DOT classified the job as light work, and the VE's supplemental information explains *why* it was so classified. Further, the VE testified that his testimony was consistent with the DOT.[7] (R. 76) Therefore, the ALJ's determination that the VE's testimony is consistent with the DOT is supported by substantial evidence.

Second, the VE's determination that the job of inspector, missing parts, is bench work is substantially supported by that job's inclusion in the chapter of the DOT entitled "Benchwork Occupations." Finally, it was proper for the ALJ to rely upon the VE's experience in determining that a bench work occupation such as inspector, missing parts, allows for alternating positions for sitting and standing. (R. 25) *See* SSR 83-12 ("In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base.").

---

[7] Additionally, Trzeciak offered no objection to the VE's qualifications at the hearing. (R. 42).

21

For the foregoing reasons, the ALJ's conclusion of non-disability at step five was well supported by the testimony of the VE and other evidence.

## III.   CONCLUSION

For the reasons expressed above, Ms. Trzeciak's claims of error fail to show that the ALJ's decision was not supported by substantial evidence. Under the applicable standard of review, that is sufficient to require that I uphold the ALJ's denial of Trzeciak's claims for DIB and SSI, which is therefore AFFIRMED. An appropriate order accompanies this Opinion.

Dated: September 12, 2016

**KEVIN MCNULTY**
**United States District Judge**